# EXHIBIT A

| | |
|---|---|
| From: | Kinney, John (HHoldings, CALMS/Claim) |
| Sent: | Friday, April 23, 2004 3:15 PM |
| To: | Zwick, Fred W (HHoldings, CALMS/Claim); Nendick, Michael J (HHoldings, CALMS/Claim) |
| Subject: | Confidential Communication |

Hoeffner.doc

Please review.  JK

John Kinney
The Hartford
Vice President
CaLMS, Asbestos
Phone: 860 547-8850

GOVERNMENT
EXHIBIT
537
H-07-263S

1

**Privileged & Confidential**



THE HARTFORD

*Interoffice Memo*

To:      Neal Wolin, Executive Vice President and General Counsel
From:    Andrew Pinkes, Senior Vice President
         John Kinney, Vice President
Date:    April 23, 2004
Re:      Hoeffner Agreement

---

This memo is in response to your request for information pertaining to the Hoeffner settlement.

*I. Agreement Background*

In February 2002, W. Todd Hoeffner from the Houston law firm of Hoeffner & Bilek, LLP approached each major insurance carrier with a proposal to resolve all silica-related bodily injury claims brought on behalf of the more than one thousand (1000) clients represented by his firm or The Law Office of James P. Bell, Jr. It is my understanding that there may be a financial relationship between the Hoeffner and Bell firms.

At the time of the settlement proposal, Hoeffner had indicated he was interested in "getting out of the silica business." To help facilitate such an agreement, Hoeffner involved Dave Anderson from Risk International Services, Inc. Risk International is a group that provides consulting services to policyholders, typically related to coverage.

Hoeffner's proposal was initially met with very little interest by the carrier group. Historically, very few mass settlements had been done in silica. Moreover, many other carriers viewed Hoeffner as a mid to low tier plaintiffs' attorney who represented very few clients with a legitimate silica-related disease. Hoeffner's firm had attempted to become a "volume" firm in Texas, utilizing the mobile screening van approach used by other firms in the area. In fact, it appears that all of Hoeffner's clients were diagnosed by the same five "physicians." Regardless, a contingency within CaLMS led by RR and JP appeared very interested in pursuing such an agreement on behalf of our policyholders.

Settlement discussions began shortly after Hoeffner's original February 2002 proposal. There is a fair amount of email traffic indicating that direct settlement discussions were occurring almost exclusively between RR, JP, Anderson and Hoeffner. Likewise, there is a variety of other evidence that indicates other carriers did not approve of RR and JP's approach of conducting discussions without the involvement of other carriers and/or the policyholders. For instance, there is one pointed email from

Malcolm Myers, ACE's Vice President of Asbestos, to Jeff Morris inquiring whether he was aware of RR and JP's activities related to the proposed agreement. We have attached a copy of Myers' email to this memo.

Ultimately, Hoeffner was able to achieve settlements on behalf of his clients with eight (8) Hartford policyholders: Pauli & Griffin, E.D. Bullard, Empire Abrasives, Mine Safety Appliances, Oglebay Norton, Ideal Basic, Gifford Hill and Pulmosan. The aggregate total of the 8 settlements is $36,610,250.60. Our share of that amount is $14,247,940.48. Details pertaining to each of these settlements is set forth below.

*II. Pulmosan*

- Handler: JP (RR supervisor)

- Claims settled:    278 for $19,600,000.00 ($70,503 per claim)

- Historic claim value:    $21,489.77 per claim

- Our share of the settlement:    40.56% ($7,950,881.12)

- Other carriers:    AIG; ACE and Interstate

- Defense Counsel: Clint Philips (Johnson, Ferguson)

- Other:

    o the last scheduled payment of $4,900,000.00 is due to be paid by 6/17/04. Our share of that payment is $1,987,440.00.

*III. Empire Abrasives*

- Handler: Nevena Stefanova

- Claims settled:    900 for $1,350,000.00 ($1500 per claim)

- Historic claim value:    Unknown – Liberty had paid 100% of these claims prior to November 2002.

- Our share of the settlement:    25.53% ($344,655)

- Other carriers:    Travelers; Liberty Mutual. Liberty Mutual paid the largest share of Empire Abrasives settlement.

- Defense Counsel: Robert Walker (Forman, Perry)

2

3

- Other:
    - File indicates that Travelers initially refused to pay its share of the settlement, claiming that Hartford had acted without authority. However, Travelers ultimately agreed to pay its share.
    - Evidence indicates that CaLMS handler on the account, Nevena Stefanova, felt "intimidated" by RR to support the agreement.

*IV. Pauli & Griffin*

- Handler:   JP (RR supervisor)
- Claims settled:   803 for $2,975,000.60 ($3,704.85 per claim)
- Historic claim value:   $2,500 per claim.
- Our share of the settlement:   26.7% ($793,767.33)
- Other carriers:   Travelers; Admiral; Nationwide; Westport. Travelers had the largest share of the Pauli & Griffin settlement.
- Defense Counsel: Eva Geer (Meyer, Knight & Williams)
- Other:
    - File indicates that Travelers initially refused to pay its share of the settlement, claiming that Hartford had acted without authority. However, Travelers ultimately agreed to pay its share of the settlement.
    - We have attached Attorney Geer's statement to this memo explaining her view on how RR and JP handled this account.

*V. Gifford Hill*

- Handler:   JP (RR supervisor)
- Claims settled:   1100 for $650,000.00 ($590 per claim)
- Historic claim value:   unknown.
- Our share of the settlement:   8.4%* (see Other)
- Other carriers:   Travelers; Fireman's Fund; Highlands; CNA; Puritan; Zurich; AIG; ACE and Royal. The insured also participated in the settlement (5.6%)

3

4

- Defense Counsel: Charles Green (Cowles & Thompson)
- Other:
    - File indicates that other carriers disagreed with Hartford's settlement approach with this account. When carrier group refused to authorize a settlement offer in excess of $505,000.00, Hartford agreed to pay the remaining $140,000.00 of the settlement. Moreover, when Zurich refused to authorize an amount greater than $390,000.00, Hartford agreed to make up the funding shortfall created by Zurich's refusal to pay. As a result, despite the fact that our cost sharing percentage is 8.4%, Hartford ultimately paid 31.2% ($203,102.10) of the settlement.

*VI. Oglebay Norton*

- Handler:   Susan Smith
- Claims settled:   900 for $500,000.00 ($555 per claim)
- Historic claim value:   $3100
- Our share of the settlement:   46.3% ($231,500.00)
- Other carriers:   Travelers; AIG and CNA. The insured also participated in the settlement (7.3%).
- Defense Counsel: Tom Taylor (Taylor & Warren)
- Other:
    - We have attached Susan Smith's statement to this memo which describes her dispute with RR over whether Oglebay should enter into the Hoeffner settlement.

*VII. Mine Safety Appliances*

- Handler:   Karen Price (RR supervisor)
- Claims settled:   800 for $4,160,250 ($5200 per claim)
- Historic claim value:   $1000
- Our share of the settlement:   4% ($133,410.00)
- Other carriers:   ACE; Travelers; Westport; CNA; Integrity and Columbia. ACE had the largest share of the settlement (55%).

4

5

- Defense Counsel: Karen Masten (Baker & Botts)

*VI. Ideal Basic*

- Handler:   JP (RR supervisor)
- Claims settled:   900 for $3,375,000.00 ($3,750 per claim)
- Historic claim value:   roughly $1000
- Our share of the settlement:   35% ($590,625.00)
- Other carriers:   Travelers (45%). The insured also participated in the settlement (20%).
- Defense Counsel: Van Gardner
- Other:
    - It appears that we may have under-funded our share of the settlement by 50%. The full payment owed on 1/29/03 of $590,625 was paid (by 2 separate checks). However, a note in ECLIPS indicates that we may owe an additional $590,625 which was allegedly due on 6/15/03. There is only approx $476,000 remaining in policy limits. We are in the process of determining the status of this issue.

*VI. Humble Sand*

- Handler:   JP (RR supervisor)
- Claims settled:   1072 for $4,000,000.00 ($3,731 per claim)
- Historic claim value:   $3500
- Our share of the settlement:   100% ($4,000,000.00)
- Other carriers:   none
- Defense Counsel: Mike Dodson (Pate & Dodson)
- Other:
    - Humble was formed in 1982. We have coverage from 1982 to 1993, at which time the insured was allegedly unable to purchase products coverage.