# EXHIBIT C

WILMER CUTLER PICKERING
HALE AND DORR LLP
Craig Goldblatt (CG 6793)
Nancy L. Manzer (NM 6569)
1875 Pennsylvania Avenue NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
Email: nancy.manzer@wilmerhale.com

STEPTOE & JOHNSON LLP
James E. Rocap III
1330 Connecticut Avenue NW
Washington, DC 20036
Tel: (202) 429-8152
Fax: (202) 429-3902
Email: jrocap@steptoe.com

*Attorneys for First State Insurance Company and New England Reinsurance Corporation*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>Pulmosan Safety Equipment Corporation,<br><br>Debtor. | Chapter 7<br><br>Case No. 10-16098 |

### DECLARATION OF MATTHEW SCOTT IN CONNECTION WITH CHAPTER 7 BANKRUPTCY CASE OF PULMOSAN SAFETY EQUIPMENT CORPORATION

Matthew Scott hereby declares under penalty of perjury as follows:

1. I am Vice President of Heritage Holdings, Inc., which is a subsidiary of The Hartford Financial Services Group, Inc. ("HFSG").[1] I submit this declaration in connection with the Chapter 7 bankruptcy case of Pulmosan Safety Equipment Corporation ("Pulmosan" or the

---

[1] HFSG is the parent holding company of numerous direct and indirect subsidiaries. HFSG and these subsidiaries are hereinafter collectively referred to as "Hartford".

3290494_1

"Debtor"). Pulmosan is an insured under certain general liability policies issued by First State Insurance Company and New England Reinsurance Corporation (collectively, "First State"), both of which are subsidiaries of Heritage Holdings, Inc. The facts set forth herein are based on my involvement, on behalf of First State, in matters related to the insurance policies issued by First State to the Debtor.

2. Pulmosan was a corporation, organized under the laws of the State of New York, engaged in the manufacture and sale of industrial safety equipment. Numerous individuals who alleged that they used such equipment have asserted claims against Pulmosan and other entities, generally alleging that the equipment did not provide adequate protection and that as a result they were injured by exposure to asbestos, silica and/or mixed dust ("Underlying Claims").

3. On August 1, 1986, Pulmosan filed a certificate of dissolution under Article 10 of New York's Business Corporation Law.[2] Since 1986, Pulmosan has remained in wind-up in accordance with the laws of the State of New York. Its sole remaining officer and principal is Mr. Howard Weiss, an 85-year-old resident of New York, New York. In the years following its dissolution, thousands of other individuals have asserted Underlying Claims against Pulmosan.

4. Pulmosan sought coverage for the Underlying Claims under policies issued by its insurers, including policies issued by First State from October 1, 1979 to October 1, 1984 (the "Policies"). Pursuant to the Policies, First State has defended and paid certain of the Underlying Claims. First State's obligation under the Policies for the Underlying Claims, however, is subject to aggregate limits in the Policies ("Aggregate Limit"). The total of the Aggregate Limit

---

[2] In an action commenced by claimants alleging they had been exposed to silica as a result of Pulmosan's allegedly defective equipment, the Supreme Court of New York, Queens County subsequently suspended Pulmosan's dissolution with respect to claimants whose first use of Pulmosan's products predated August 1, 1986. *See In the Matter of Bryant Elbert Ford, et al. v. Pulmosan Safety Equipment Corporation*, 831 N.Y.S.2d 353 (NY Sup. Ct. Queens Cty. 2008), *aff'd*, 862 N.Y.S. 2d 56 (N.Y. Sup. Ct. App. Div. 2008).

in all the Policies is forty-eight million dollars ($48,000,000.00). First State has made substantial payments for settlements or judgments of claims against Pulmosan that are subject to the Aggregate Limit, and the limit is now approaching exhaustion. As of the date of this Declaration, the remaining unexhausted portion of the Aggregate Limit is four hundred fourteen thousand five hundred twenty-eight dollars and seventy-five cents ($414,528.75).

5. Two matters have caused First State to enter into discussions with Mr. Weiss regarding the most appropriate method for addressing the remaining Underlying Claims in a fair and equitable manner.

### The Improper Exhaustion Assertion

6. Certain claimants in the Underlying Claims have asserted that First State may be obligated to pay on behalf of Pulmosan amounts for the Underlying Claims in excess of the Aggregate Limit. Those claimants assert that two former Hartford employees engaged in improper conduct in connection with the settlement of silica claims in which the claimants were represented by a plaintiffs' attorney in Texas ("Hoeffner"). These two employees entered guilty pleas in February 2010 to Count One of the Second Superseding Indictment in United States v. Hoeffner, et al., No. H-07-263 (S.D. Tex.). Count One alleges that the employees conspired with Hoeffner to defraud Hartford by misrepresenting and concealing certain facts regarding their conduct and involvement in the settlement of certain bodily injury claims arising out of exposure to silica, including but not limited to their acceptance of payments from Hoeffner.

7. In approximately September 2009, prior to the entry of the former employees' pleas, a jury trial was held with respect to related charges against Hoeffner. During the trial, no witness testified that any of the actual settlement payments were unreasonable or inflated as a result of the conduct of the former Hartford employees. The Hoeffner trial ended in a mistrial (the jury

could not reach a unanimous resolution). The charges against Hoeffner in the subsequently-filed Second Superseding Indictment, including the Count to which the former Hartford employees pleaded guilty, are currently subject to an appeal of a denial of a motion to dismiss. The appeal is pending before the United States Court of Appeals for the Fifth Circuit. The two former employees, whose plea agreements are conditioned on the outcome of this appeal, are awaiting sentencing.

8. The Second Superseding Indictment does not mention Pulmosan. Nor does it allege that any settlements of Pulmosan claims were unreasonable or inflated in amount (or otherwise). First State has paid all amounts due from it under all Pulmosan settlement agreements that trigger the Policies, including all settlement agreements with claimants represented by Hoeffner. Pulmosan has received, in return, full releases from all such claimants.

9. Accordingly, First State believes that all payments it has made to settle claims against Pulmosan validly erode the Aggregate Limit in the Policies. The admitted conduct of its two former employers, while victimizing Hartford, did not harm Pulmosan, which has received full, traditional, bargained-for claim releases from the claimants in return for First State's claim payments on behalf of Pulmosan.

## The Weiss Additional Insured Claim

10. Mr. Weiss, as president of Pulmosan, has asserted that, as an executive officer of Pulmosan, he is entitled to coverage under the Policies for claims asserted personally against him arising out of Pulmosan's business activities. On information and belief, Mr. Weiss has been a defendant in a limited number of the Underlying Claims, and at least one such claim against him is presently pending.

11. First State and Mr. Weiss dispute the extent, if any, of First State's obligations to Mr. Weiss under the Policies. To resolve this dispute, First State and Mr. Weiss have entered into an agreement, dated as of November 12, 2010, pursuant to which First State has agreed to pay certain defense costs incurred by Mr. Weiss in an amount not to exceed $1.8 million. Under the Agreement, First State is not obligated to indemnify Mr. Weiss for any settlement or judgment arising out of any Underlying Claims asserted against him. The agreement does not affect the scope or extent of First State's obligations to Pulmosan under the Policies.

12. In light of the imminent exhaustion of the Policies, the assertions of improper exhaustion, Mr. Weiss's additional insured claims, and the numerous pending Underlying Claims, First State concluded that the most orderly forum for resolving any remaining disputes with respect to available coverage, and for the distribution of insurance proceeds to those creditors asserting claims against Pulmosan, would be a chapter 7 bankruptcy. Accordingly, First State entered into discussions with Mr. Weiss regarding a possible bankruptcy filing by Pulmosan. These discussions led to Pulmosan's filing of this bankruptcy case and to the agreement with Mr. Weiss discussed above.

13. Pulmosan has retained Morrison Cohen LLP to represent it in connection with this bankruptcy case. Hartford has paid the fees and expenses incurred by Morrison Cohen in advising both Pulmosan and Mr. Weiss with respect to, and in preparing and filing, this bankruptcy case. Hartford will continue to pay the necessary and reasonable fees and costs incurred by Morrison Cohen in connection with this bankruptcy case, including its work in assisting Pulmosan in meeting its obligations under Section 521 of the Bankruptcy Code, as well any fees and costs incurred in having to respond to any discovery sought within the Bankruptcy case by any party, including but not limited to the chapter 7 trustee. Payment of these fees and

expenses will not reduce the limits available for payment of claims against Pulmosan under the Policies. Hartford accordingly believes that such payment does not affect property of the estate or require court approval. Hartford nevertheless believes it appropriate to disclose these payments.

14. Upon the appointment of a Trustee, First State stands prepared to engage in good faith negotiations with the Trustee regarding any disputes that may exist between the Debtor's estate and First State with respect to coverage under the Policies. First State is hopeful that a consensual resolution may be reached with the Trustee that provides finality for both First State and Pulmosan, and that will best serve the interests of Pulmosan's creditors and its bankruptcy estate.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: November 15, 2010

/s/ Matthew Scott
Matthew Scott