# EXHIBIT E

1

```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION


UNITED STATES OF AMERICA     )
                             )
VS.                          )      NO. H-CR-07-263
                             )      April 28, 2008
WARREN TODD HOEFFNER         )
RACHEL ROSSOW                )
JOHN PRESTAGE                )


        DISCOVERY HEARING and MOTION FOR CONTINUANCE
             BEFORE THE HONORABLE DAVID HITTNER


For the Government:          Mr. John Braddock, AUSA
                             Mr. Quincy L. Ollison, AUSA
                             U. S. Attorney's Office
                             910 Travis, Suite 1500
                             Houston, Texas 77002

For Defendant Hoeffner:      Mr. Chris Flood
                             Flood & Flood
                             914 Preston at Main, Suite 800
                             Houston, Texas   77002
                                      and
                             Ms. Lynne Liberato
                             Haynes and Boone, LLP
                             One Houston Center, Suite 2100
                             Houston, Texas   77010

                             Mr. Dan Cogdell
For Defendant Rossow:        Cogdell Law Firm
                             402 Main Street, Second Floor
                             Houston, Texas   77002

                             Mr. Paul Nugent
For Defendant Prestage:      Foreman, DeGeurin & Nugent
                             300 Main Street
                             Houston, Texas   77002

Court Reporter:              Bruce Slavin, RPR, CM

Proceedings reported by mechanical stenography and produced
by computer-aided transcription.
```

7/26 MM   PTX #000100
Cause No. 2010-15489
*J. Sanchez, et al v. Hartford Ins., et al*

1   THE COURT: Go on.

2   MR. FLOOD: The allegation in the indictment is
3   that these settlements are not fair and reasonable, that
4   they were the product of a kick-back scheme.

5   THE COURT: Right.

6   MR. FLOOD: I've interviewed defense counsel for
7   the insurance, a bunch of lawyers in Houston that
8   represented these same companies, and every time I get in an
9   interview I keep saying, "Well, didn't you sign off on this
10  settlement? Didn't you recommend this settlement?"

11  And they say, "Yeah, we do a whole settlement
12  memorandum that goes to the insurance company."

13  "And you sent that to The Hartford
14  recommending these settlements?"

15  "Yes, we did."

16  "Well, can I see it?"

17  "You're going to have to get that from
18  The Hartford."

19  So, we go to the Government and we say, "Hey.
20  Give us the letter from Tommy Taylor's office where he said
21  that this was a good, fair and reasonable settlement, is in
22  the best interests of The Hartford," because that's --

23  THE COURT: Was this lawyer allegedly in on the
24  deal?

25  MR. FLOOD: No. No. That's what I am saying.

```
 1   These are independent counsel, independent of The Hartford.
 2   All of them signed off on this deal.
 3           THE COURT:  Well, that's representing plaintiffs.
 4           MR. FLOOD:  No.  Representing the insureds.
 5   Representing the sand companies.
 6           THE COURT:  I see what you mean.  Representing
 7   The Hartford?
 8           MR. FLOOD:  Well, representing the same company --
 9           THE COURT:  The what?
10           MR. FLOOD:  The same company.  Let's take Humble
11   Sand, for instance.  Humble Sand is a company that was sued
12   for having products that cause silica-related injuries.
13   They have an independent lawyer who The Hartford pays that
14   lawyer.
15           THE COURT:  Hang on a second.
16                 Any problem getting those?
17           MR. BRADDOCK:  I have requested it, Your Honor,
18   and --
19           THE COURT:  Who is the general counsel?  Who is the
20   president of The Hartford?  How about that?
21           MR. BRADDOCK:  Ramani Ayer, I think, is chairman of
22   the company.
23           THE COURT:  What's his name?
24           MR. BRADDOCK:  Ramani Ayer.
25           THE COURT:  R-o-m --
```

1             MR. OLLISON:  R-a-m-a-n-i.
2             THE COURT:  Again.  Try that again.  First name.
3             MR. BRADDOCK:  R-a-m-a-n-i.
4             THE COURT:  Last name.
5             UNIDENTIFIED SPEAKER:  It's A-y-e-r.
6             MR. BRADDOCK:  A-y-e-r.
7             THE COURT:  A-y-e-r.
8             MR. BRADDOCK:  Yes, Your Honor.
9             THE COURT:  All right.  Is he aware of what's going
10   on?
11            MR. BRADDOCK:  I don't know if it's going up to
12   him, but certainly the general counsel's office is aware of
13   the requests.
14            THE COURT:  And they haven't cooperated with you?
15            MR. BRADDOCK:  No.  They have cooperated.  They
16   have said, "We have searched for them."
17            THE COURT:  Oh, come on.  I am not jumping you.  We
18   have been around long enough.  All right?  That letter has
19   got to be there somewhere on all of these multiple cases.
20   If the defendant's lawyer signs off on it, don't you think
21   that's relevant, at least from the defense point of view?
22            MR. BRADDOCK:  If it exists, I certainly would
23   agree.
24            THE COURT:  What about the individual lawyers?
25   They have copies in their files?

1                MR. FLOOD:  I presume so.  They wouldn't give it to
2    me because they said there is a privilege there.
3                THE COURT:  Well, I can override that.
4                MR. FLOOD:  If The Hartford does not produce them,
5    that was going to be my next --
6                THE COURT:  And if they've got them they're going
7    to be answering to me.  How do you want to handle that?  You
8    got corporate representatives back there?
9                MR. BRADDOCK:  No, I do not, Your Honor.
10               THE COURT:  You're getting some good information
11   from the back left.
12               MR. BRADDOCK:  No, I do not.
13               THE COURT:  How do you want to handle it?
14                    Off the record.
15                    (Off-the-record discussion)
16               THE COURT:  It's a criminal case.  We've got to get
17   back on the record.
18               MR. BRADDOCK:  Perhaps the best way to approach it
19   would be to go ahead and let the lawyers who may have
20   produced these letters produce them from their files.
21               THE COURT:  Well, how many are there involved in
22   your cases?
23               MR. BRADDOCK:  There's only a handful -- I say a
24   handful.  I think maybe seven, eight lawyers.
25               THE COURT:  Okay.  That might be an easier way to

1  to do it.

2           MR. BRADDOCK:  Yes, Your Honor.

3           THE COURT:  Who are the lawyers?  You got names and
4  addresses of them?

5           MR. FLOOD:  Oh, sure.  We have got the list of
6  lawyers.  But, Your Honor, The Hartford has these.

7           THE COURT:  Wait.  Let's assume they don't.  Let's
8  assume for argument's sake they don't.  We can go after the
9  lawyers here.  Right?

10          MR. FLOOD:  Sure.  We can go to Rule 17 and get it
11 from the lawyers here, I assume.

12          THE COURT:  Right.

13          MR. NUGENT:  Judge, my concern is then The Hartford
14 can say, "We have never seen these letters.  We don't have
15 them," when, in fact, I think they haven't been as diligent
16 searching as they might be.

17          THE COURT:  Does The Hartford know the names of the
18 cases that they want, their defense lawyer letters?

19          MR. BRADDOCK:  Yes, Your Honor.

20          THE COURT:  Mr. Flood, you let them know exactly
21 which cases you want the recommendation letters from the
22 defense counsel recommending it.  You let them know that.

23          MR. FLOOD:  Certainly.  I have, in fact, identified
24 it out of e-mails that they gave us.

25          THE COURT:  I am with you on this one.  Okay?