# EXHIBIT F

```
                THE UNITED STATES DISTRICT COURT
                  SOUTHERN DISTRICT OF TEXAS
                       HOUSTON DIVISION

                          * * * * *

UNITED STATES OF AMERICA      *    CRIMINAL NO. 07-263
                              *
Versus                        *    Houston, Texas
                              *
WARREN TODD HOEFFNER,         *    9:30 a.m.
RACHEL ROSSOW, and            *
JOHN PRESTAGE                 *    October 16, 2008

                          * * * * *

                         MOTION HEARING

                       (Morning Session)

               BEFORE THE HONORABLE DAVID HITTNER
                  UNITED STATES DISTRICT JUDGE

                          * * * * *
```

Proceedings recorded by computer stenography
Produced by computer-aided transcription

7/26 MH   PTX #000105
Cause No. 2010-15489
*J. Sanchez, et al v. Hartford Ins., et al*

```
02:51:36

02:52:04

02:52:12

02:52:22

02:52:33
```

1  defense that if they wanted access to the ECLIPS system, she
2  would make it available to them.  All they had to do was pick up
3  the phone and call her, and it would have been made available.
4              She also said, Your Honor, that with respect to
5  the defense counsel recommendation for Specialty Sand that they
6  could -- did not find that recommendation; but critically and
7  highly importantly, she says that The Hartford would waive their
8  attorney-client privilege to give them access to speak to any of
9  the defense counsel involved -- that represented the insured if
10 they wanted to speak to them.
11             THE COURT:  Let me ask you this:  Did they take up the
12 offer --
13             MR. OLLISON:  No, sir.
14             THE COURT:  -- to go up and talk to or find -- or get
15 the ECLIPS file?
16             MR. OLLISON:  No, sir, they did not.
17             THE COURT:  Have they been up there at all to The
18 Hartford headquarters, any of them, or their investigators, as
19 best you understand?
20             MR. OLLISON:  As best I understand, neither has been
21 there.
22             THE COURT:  So you're saying that Hartford is stating,
23 basically, it's got an open file.
24             MR. OLLISON:  Yes, sir.  And that's very clear in
25 their letter.  And in their response they said it's buried in

Gayle Dye, CSR, RDR, CRR - 713.250.5582

```
02:52:52

02:53:09




02:53:29




02:53:43
```

 1  her letter.  It's not buried in their letter at all.  So Your
 2  Honor, I think -- you know, we take them as we get them; but I
 3  think that clearly gives the Court some indication of the bona
 4  fides of The Hartford in this case.
 5              And I also want to represent to the Court, as
 6  Mr. Braddock said, when we talked to Neal Wolin, who's the chief
 7  operating officer of that company, he told those senior
 8  management officials, pursuant to your directive, "Leave no
 9  stone unturned."
10              And once he put his foot down on that, these
11  documents came; and Your Honor, the Government in its response,
12  when we indicate that we got documents for the very first time,
13  that is contrary to what Ms. Sacksteder says; but we stand by
14  that.
15              THE COURT:  Have you been up or your staff or
16  investigators or the case agents been up to Hartford?
17              MR. OLLISON:  Yes, Your Honor.  Mr. Braddock and I
18  have made two trips.  Our investigators have made --
19              How many?
20              AGENT TROY CALDRON:  More than that.
21              AGENT TIM CLARKE:  Three or four.
22              MR. OLLISON:  Made three or four trips up there.
23              THE COURT:  So basically, you're stating that in that
24  letter it's directed to the defense they have an open file?
25              MR. OLLISON:  Well --

 02:53:59

 02:54:11

 02:54:24

 02:54:30

 02:54:50

1  THE COURT: Basically?
2  MR. OLLISON: Yes, to the extent of what I represented
3  to the Court of what she said in that letter.
4  THE COURT: Okay, thank you.
5  Mr. Braddock, go right ahead.
6  MR. BRADDOCK: Yes, Your Honor. I mean, I'm not
7  prepared to go line by line as to each one of the items that
8  Mr. Flood talked about.
9  THE COURT: Well, you made a lot of notes there on the
10 yellow pages. So when you're done visiting with me, you know,
11 as far as the concerns you have, you might go down there --
12 MR. BRADDOCK: Yes.
13 THE COURT: -- and touch on the points. And then
14 again, I'm not saying you need to do it. I'm just saying it's
15 your opportunity.
16 MR. BRADDOCK: Yes, Your Honor. Well, one of the
17 issues that was raised is that there's got to be e-mails that
18 were purged.
19 THE COURT: There's got to be.
20 MR. BRADDOCK: Yes. And we turned over -- we turned
21 over the electronic e-mails that we received from The Hartford;
22 and most of those were in '07, in August of '07; and then, the
23 other batch was in May of '08. And those are what were on those
24 e-mail databases that we got.
25 Now, we understand that The Hartford has found